**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE**

|  |  |
|---|---|
| **DARIN STEARSMAN<br>and JULIANA STEARSMAN**<br><br>       **Plaintiffs,**<br><br>**v.**<br><br>**UPONOR, INC.,**<br><br>       **Defendant.** | **Case No. 2:23-cv-02777-MSN-cgc** |

**DEFENDANT UPONOR, INC.'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION OR,
ALTERNATIVELY, TO DISMISS PLAINTIFFS' COMPLAINT**

Defendant, Uponor, Inc. ("Uponor"), pursuant to the Federal Arbitration Act ("FAA") and Fed.R.Civ.P. 12(b)(6), submits this Memorandum in Support of its Motion to Compel Arbitration or, Alternatively to Dismiss Plaintiffs' Complaint.

## I.   INTRODUCTION

Plaintiffs allege that cross-linked polyethylene, or PEX A, manufactured by Uponor and installed in their home in Lakeland, Tennessee (the "Property"), sustained a "longitudinal split" and caused a water leak which damaged the Property.  Plaintiffs also allege, however, that Uponor is liable for a breach of an express warranty, attached to the Complaint as Exhibit A ("Warranty"), in connection with  their submission of a claim ("Claim") under the Warranty, attached to the Complaint as Exhibit B.  Given that Plaintiffs: i) seek to benefit from the terms of the Warranty; ii) allege that the products at issue are subject to the terms of the Warranty; and iii) the Warranty contains terms requiring any dispute related to a claim concerning an Uponor product to be resolved through arbitration, Plaintiffs cannot maintain the instant action in a court of law but must proceed with their claim through the arbitration process. In sum, Plaintiffs must arbitrate their

1

dispute in accordance with the Warranty, which provides that "[i]n the event claimant and Uponor are unable to resolve a claim through informal means, the parties shall submit the dispute to the American Arbitration Association or its successor (the "Association") for arbitration, and any arbitration proceedings shall be conducted before a single arbitrator in the Minneapolis, Minnesota metropolitan area."  In accordance with the plain language of the Warranty, and case authorities interpreting the Federal Arbitration Act ("FAA"), the Court should compel arbitration.

Should the Court decline to apply the plain language of the Warranty and compel this matter to arbitration, then the following alternative issues mandate the dismissal of Plaintiffs' claims at the pleading stage.

First, Plaintiffs' claims are barred, in their entirety, by the ten-year statute of repose, Tenn. Code Ann. § 29-28-103, which provides that any action against a manufacturer of a product "must be brought within ten (10) years from the date on which the product was first purchased for use or consumption".  In the Claim which Plaintiffs submitted to Uponor, Exhibit B to the Complaint, they judicially admit  that i) the PEX was installed in the Property on November 30, 2012 and ii) the construction of the Property was completed on November 30, 2012.  It is equally undisputed that Plaintiffs did not file their Complaint until November 3, 2023 – well over  ten (10) years after the product was "first purchased for use or consumption" resulting in all claims at issue being barred.

Second, Plaintiffs' claims for strict liability, negligence and product liability should be dismissed because they are barred by Tennessee's economic loss rule, which forbids non-contract claims when, as here: (a) Plaintiffs seek recovery for economic losses purportedly resulting from damage to various parts of an integrated product – namely, their homes; and (b) there are no allegations of any personal injury resulting from the Uponor PEX.  *See Lincoln Gen. Ins. Co. v.*

*Detroit Diesel Corp.*, 293 S.W.3d 487, 489 (Tenn. 2009) (adopting *East River Steamship Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 868-71 (1986)); *Tenn. Farmers Mut. Ins. Co. v. Ford Motor Co.*, No. W2001-00046-COA-R3-CV, 2002 Tenn. App. LEXIS 429, at \*14-20 (Ct. App. June 17, 2002).

Third, Plaintiffs' claims for strict liability, negligence, and product liability also must be dismissed because the Complaint fails to plead facts establishing the essential element of causation. Specifically, Plaintiffs have failed to set forth any non-conclusory facts substantiating their speculative theory that the PEX tubing would fail "due to oxidation when exposed to the water supply", rather than by any of the obviously possible alternatives, such as: (i) faulty installation of the PEX by the person or entity who installed the home's potable water plumbing system; (ii) improper disinfection of the PEX after installation but prior to being placed into service; or (iii) operational deficiencies in other aspects of the Properties' potable water plumbing systems that may have subjected the PEX to conditions that adversely impacted its service life such as excessive system pressures, temperatures and/or flow rates.

Fourth, Plaintiffs' implied warranty claim fails because: (i) the Warranty governing the PEX is binding upon Plaintiffs pursuant to Tenn. Code Ann. § 47-2-316 and expressly disclaims all implied warranties; and (ii) the claim also is facially barred by the applicable four-year statute of limitations given Plaintiffs' allegation that the Property was substantially completed in 2012. *See* Tenn. Code Ann § 47-2-725(1).

## II.    THE COMPLAINT'S ALLEGATIONS

Plaintiffs own a home in Lakeland, Tennessee (Comp. at ¶6) constructed by Curtis Ward and completed in November 2012. (Comp. at Ex. B). Plaintiffs allege that their home "utilized a recirculating hot water system that consists of, among other things, cross-linked polyethylene, or

PEX A, tubing to circulate water throughout the home to provide water service to appliances and plumbing applications." (Comp.¶7.)   Plaintiffs further contend that: i) on August 20, 2022 they "discovered wet spots on the wall and water running underneath the base board in the Master Toilet Closet." (Comp. ¶9)  and ii)  on August 26, their daughter "noticed water running down the archway wall" and other signs of water intrusion. (Comp. ¶10).  Plaintiffs allege that their plumber discovered that water "was emanating from a longitudinal split" in the PEX.  (Comp. ¶10). While Plaintiffs assert, "on information and belief", that the "longitudinal splits" in the PEX were "caused by a brittle failure of the tubing material due to oxidation when exposed to the water supply",  they fail to describe how they arrived at that alleged conclusion or identify any facts otherwise substantiating their supposition.  (Id. ¶ 11).

Plaintiffs contend that the water intrusion caused unidentified "damage to their personal property and/or fixtures kept in the dwelling", (Comp. at ¶15). They have secured estimates to repair that unidentified damage in an amount "not less than" $163,721.50.  (Comp. at ¶17).  They additionally assert  that they incurred out-of-pocket costs of $6,915.38 to make "partial repairs" to the PEX tubing (Comp. at ¶17) and will incur the further expense of securing "alternate quarters during the repair process" of approximately $25,000. (Comp. at ¶18).

As Plaintiffs concede, the Uponor PEX allegedly installed in the Property is subject to, and governed by, an express written and limited warranty ("Warranty") that, among other things, contains the following mandatory arbitration provision covering any and all claims and disputes between Uponor and Plaintiffs as to the PEX:

**Warranty Claim Dispute Process:**

In the event claimant and Uponor are unable to resolve a claim through informal means, the parties shall submit the dispute to the American Arbitration Association or its successor (the "Association") for arbitration, and any arbitration proceedings shall be conducted before a single arbitrator in the Minneapolis, Minnesota metropolitan area. NOTWITHSTANDING THE FOREGOING, NEITHER THE

> CLAIMANT NOR UPONOR, INC. SHALL BE ENTITLED TO ARBITRATE ANY CLAIMS AS A REPRESENTATIVE OR MEMBER OF A CLASS, AND NEITHER THE CLAIMANT NOR UPONOR SHALL BE ENTITLED TO JOIN OR CONSOLIDATE CLAIMS WITH ANY OTHER PARTIES IN ARBITRATION OR IN LITIGATION BY CLASS ACTION OR OTHERWISE.

(Comp. at Ex. A, "Warranty Claim Dispute Process").  The Warranty also expressly disclaims all other warranties, express and implied:

> THIS LIMITED WARRANTY IS THE FULL EXTENT OF EXPRESS WARRANTIES PROVIDED BY UPONOR, AND UPONOR HEREBY DISCLAIMS ANY WARRANTY NOT EXPRESSLY PROVIDED HEREIN, INCLUDING, WITHOUT LIMITATION, THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE WITH RESPECT TO THE PRODUCTS COVERED HEREUNDER.

(*Id.* p. 2, "Miscellaneous").

Plaintiffs admit that they submitted a claim ("Claim") in accordance with the Warranty, ( Comp. at ¶ 39), which they attach to the Complaint as Exhibit B.  (Comp. ¶ 37, Ex. B). They allege that Uponor rejected their Claim  (Comp. at ¶ 39), but conspicuously fail to allege when Uponor rejected the claim or the basis for that rejection.  In their Claim, Plaintiffs represented that the "Date of Installation" of the PEX was November 30, 2012.  [Doc. 1-1, PageID 21].  They also represented that November 30, 2012 was the date on which the "Construction [was] Completed" by Curtis Ward of Distinctive Homes LLS as the builder.  [Id.]

Based on the allegations in the Complaint, Plaintiffs assert six causes of action: Strict Product Liability (Count 1), Negligence (Count 2), Products Liability (Count 3), Breach of Implied Warranty (Count 4), Breach of Express Warranty (Count 5), and a Violation of the Tennessee Consumer Protection Act (Count 6). (Comp. ¶¶ 19-46).

## III.    ARGUMENT REGARDING ARBITRATION

### A.    Legal Standard

5

Both the FAA and Tennessee law reflect a strong public policy supporting arbitration as a means of settling differences and thereby avoiding litigation, in accordance with ordinary contract principles. *Cooper v. MRM Inv. Co.*, 367 F.3d 493, 497-99 (6th Cir. 2004); *see also Morgan Keegan & Co., Inc. v. Smythe*, 401 S.W.3d 595, 603 (Tenn. 2013) (describing arbitration agreements in private contracts as "now favored in Tennessee both by statute and existing caselaw"). Thus, agreements to arbitrate are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; *Cooper*, 367 F.3d at 499. In particular, the FAA – which governs disputes involving interstate commerce and applies here since Plaintiff alleges Uponor, an Illinois corporation with its principal place of business in Minnesota, sold plumbing products used in the Property (Comp. ¶¶ 2,) – "leaves no place for the exercise of discretion" and "instead mandates that" courts "shall direct the parties to proceed to arbitration on issues as to which" an agreement to arbitrate exists. *KPMG LLP v. Cocchi*, 565 U.S. 18, 22 (2011).

As such, under the FAA, courts must determine: (1) whether a valid agreement to arbitrate exists and, if it does; (2) whether the agreement encompasses the dispute at issue. *Anderson v. Amazon.com, Inc.*, 478 F. Supp. 3d 683, 691 (M.D. Tenn. 2020). If the response is affirmative on both counts, then the FAA requires the court to enforce the arbitration agreement in accordance with its terms. *Id.* Consistent with these governing rules, the Court here must compel arbitration because a valid agreement to arbitrate exists covering Plaintiffs' claims in this action.

**B.      Plaintiffs Are Bound by the Warranty's Arbitration Provision**

The Warranty binds Plaintiffs as "the owner[s] of the applicable real property" involved in this matter. (Warranty at p. 1). That includes the agreement to arbitrate contained in the Warranty. (*Id.*, at p. 2, "Warranty Claim Dispute Process"). Thus, Plaintiffs are legally and contractually

bound by the Warranty's terms, including its mandatory arbitration provision. *See Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 629 (6th Cir. 2003) ("non-signatories may be bound to an arbitration agreement under ordinary contract and agency principles," including under third-party beneficiary and assignment theories) (citing *Arnold v. Arnold Corp.*, 920 F.2d 1269, 1281 (6th Cir.1990)).

First, Plaintiffs are beneficiaries of the Warranty since both Uponor and Plaintiffs' builder, Ward, clearly understood and intended for the Warranty to transfer and inure to the benefit of Plaintiffs, as the purported owners of the subject home after its construction. Plaintiffs necessarily concede this point since they admit that they "made application for coverage under the warranty" (Comp. ¶39) and allege a cause of action for breach of the Warranty. (Comp., ¶¶ 34-43). Additionally, Plaintiffs allege a violation of the TCPA by contending, *inter alia*, that Uponor "did not honor" the Warranty. (Comp. at ¶45). Plaintiffs have therefore judicially admitted that they were persons and entities who would reasonably be expected to use, consume and/or be affected by Uponor's PEX. Standing alone, these binding concessions mandate a finding that Plaintiffs are beneficiaries of the Warranty and bound by its terms. *Barnes v. Owens-Corning Fiberglas Corp.*, 201 F.3d 815, 829 (6th Cir. 2000) ("Factual assertions in pleadings and pretrial orders, unless amended, are considered judicial admissions conclusively binding on the party who made them") (quoting *White v. ARCO/Polymers, Inc.*, 720 F.2d 1391, 1396 (5th Cir.1983)).

Moreover, the Warranty's plain language makes clear that it was intended to cover and govern homeowners who purchase real property from builders responsible for the initial installation of the PEX. Specifically, the Warranty provides that it applies "to the **owner of the applicable real property**" and that the "products ... shall be free from defects in material and workmanship, under normal conditions of use when installed as part of the application listed

7

below."   (Warranty at P. 1; emphasis added).  Consistent with that plain language, Uponor

understands and intends that its Warranty will ultimately cover, and inure to the benefit of, owners

who acquire homes containing PEX from builders.  It also is axiomatic that builders, like Ward,

intend for the PEX Warranty to benefit subsequent home purchasers/owners – indeed, this very

business model is predicated on building and then selling homes, together with all installed

components and their corresponding warranties, such as PEX pipes.  Under these circumstances,

Plaintiffs are third-party beneficiaries of the Warranty,[1] and Tennessee law is clear that "an

arbitration provision in a contract is enforceable against a third-party beneficiary who has filed a

cause of action seeking to enforce a contract."  *Benton v. Vanderbilt Univ.*, 137 S.W.3d 614, 616

(Tenn. 2004) (an arbitration provision in a contract is applicable to actions brought by a third-party

beneficiary of the contract containing the arbitration agreement); see also *Swift Enter., LLC v.*

*Trunorth Warranty Plans of N. Am., LLC*, 2022 U.S. Dist. LEXIS 240986, at *24 (E.D. Tenn. Sept.

30, 2022) (compelling third-party beneficiary to arbitrate because its claims could not "reasonably

[be] construe[d] . . . as anything other than an attempt to recover amounts allegedly owing under

the terms of the warranties.").  Here, Plaintiffs' claims related to the PEX seek recovery for nothing

more than the PEX's supposed failure to perform as warranted.  Thus, holding Plaintiffs to the

Warranty's arbitration clause is manifestly appropriate and required under Tennessee law.

---

[1] *Owner-Operator Indep. Drivers Ass'n v. Concord Efs*, 59 S.W.3d 63, 70 (Tenn. 2001) ("A third party is an intended third-party beneficiary of a contract, and thus is entitled to enforce the contract's terms, if (1) The parties to the contract have not otherwise agreed; (2) Recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties; and (3) The terms of the contract or the circumstances surrounding performance indicate that either: (a) the performance of the promise will satisfy an obligation or discharge a duty owed by the promisee to the beneficiary; or (b) the promisee intends to give the beneficiary the benefit of the promised performance.").

Second, Plaintiffs allege a claim for breach of implied warranty which legally and factually requires, and thus necessarily presumes, contractual privity between Plaintiffs and Uponor. (Compl. at ¶¶ 86-90). *Americoach Tours, Inc. v. Detroit Diesel Corp.*, No. 04-2016 B/V, 2005 WL 2335369, at *8 (W.D. Tenn. Sept. 23, 2005) ("The Court has found no opinion in which a Tennessee court has held that in the absence of privity a plaintiff could bring a claim for breach of an implied warranty to recover only economic damages"). By asserting a claim requiring contractual privity and by further asserting claims arising out of the contractual relationship, Plaintiffs must be deemed contractually bound by the Warranty applicable to the PEX. *See Benton*, 137 S.W.3d at 618.

Third, it is the regular practice of home builders to assign the warranties of products incorporated into newly constructed homes to the home purchasers – including product, material, and component warranties – as part of the completion of the delivery of the home from the builder to the buyer of the home. Accordingly, Plaintiffs are also bound by the Warranty as assignees of that document. *See, e.g., Martin v. Cavalry SPV I, LLC*, 2014 U.S. Dist. LEXIS 43293, at *22-23 (E.D. Ky. Mar. 31, 2014) ("despite the fact that Cavalry is a non-signatory to the original agreement, courts have allowed similar arbitration agreements to be enforced by or against a non-signatory when the non-signatory succeeded to the rights and obligations of the signatory assignor."); *Dick Broad. Co. of Tennessee v. Oak Ridge FM, Inc.*, 395 S.W.3d 653, 671-72 (Tenn. 2013) ("Generally, contractual rights can be assigned" where an agreement contains no limitation on the rights of either party to assign the agreement).

### C.    The Warranty's Arbitration Provision Covers Plaintiffs' Claims

The Warranty's broad arbitration provision plainly covers and requires arbitration of Plaintiffs' claims in this action. In determining whether claims are covered by an arbitration

9

clause, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration[.]" *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). Thus "where [a] contract contains an arbitration clause, there is a presumption of arbitrability in the sense that [an] order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs. v. Communs. Workers of Am.*, 475 U.S. 643, 650 (1986). Consistent with this law, the Court must find in the instant case that the Warranty covers Plaintiffs' claims, all of which exclusively arise out of, and concern, the performance of the PEX allegedly installed in the Property.

Here, the Uponor Warranty provides that if Uponor and a property owner cannot informally resolve any dispute regarding an Uponor product (including PEX), the owner and Uponor "shall submit the dispute to the American Arbitration Association or its successor (the "Association") for arbitration ...." (Warranty at p. 2). This broad language encompasses, and mandates the arbitration of, Plaintiffs' alleged claims against Uponor, all of which relate to the design, manufacture, condition, and performance of PEX allegedly sold by Uponor and installed in the Property. That is particularly true where the Warranty provides an owner's "exclusive remedies" with respect to products sold by Uponor that have allegedly "failed" or are "defective." (*Id.* at p. 1). To that end, the Warranty's arbitration provision does not exclude any claims from its ambit, and a separate provision of the Warranty broadly provides, by "mutual agreement of the parties", that "any claims arising from breach of contract, breach of warranty, tort, or any other claim arising from the sale or use of Uponor's products shall be governed and construed under the laws of the State of Minnesota." (*Id.* at p. 2, "Miscellaneous"); *Anderson*, 478 F. Supp. 3d at 699 (reviewing whether an arbitration agreement encompasses a dispute by reading the terms of the agreement). When

presented with similar arbitration clauses, courts in the Sixth Circuit have compelled arbitration.

*Masco Corp. v. Zurich Am. Ins. Co.*, 382 F.3d 624, 627 (6th Cir. 2004) (when faced with a broad

arbitration clause, such as one covering any dispute arising out of an agreement, a court should

follow the presumption of arbitration and resolve doubts in favor of arbitration).

**IV.      ALTERNATIVE ARGUMENTS SUPPORTING MOTION TO DISMISS**

> **A.       All Causes of Action in the Complaint are Barred by the Ten (10) Year Statute
> of Repose Codified in the Tennessee Products Liability Act ("TPLA"), Tenn.
> Code § 29-28-103.**

It is undisputed that Plaintiffs filed the Complaint on November 3, **2023**, but they admit in

the Claim, attached to the Complaint as Exhibit B, that the PEX was installed in the Property on

November 30, **2012**:



**Project Id          Address**
PRJ-0018586      4726 Maple Forest Dr, Lakeland, Tennessee, United States, 38002

Claim Information

**Date Of Installation**
11/30/2012

[Doc. 1-1, PageID 21, Ex. B].  Plaintiffs further admitted that the construction of the Property was

completed on November 30, **2012**.  [Id.]

The Complaint is therefore barred by the ten (10) year statute of repose, Tenn. Code § 29-

28-103, which provides:

> **Any action against a manufacturer or seller of a product for injury to person
> or property** caused by its defective or unreasonably dangerous condition must be
> brought within the period fixed by  §§ 28-3-104, 28-3-105, 28-3-202and 47-2-725,
> but notwithstanding any exceptions to these provisions, it must be brought within
> six (6) years of the date of injury, **in any event, the action must be brought within
> ten (10) years from the date on which the product was first purchased for use
> or consumption**, or within one (1) year after the expiration of the anticipated life
> of the product, **whichever is the shorter**, except in the case of injury to minors
> whose action must be brought within a period of one (1) year after attaining the age
> of majority, whichever occurs sooner.

(Emphasis added.)  Plainly, Plaintiffs admit in the Complaint that  the PEX at issue in this litigation was "first purchased for use or consumption" before November 30, 2012, since they stated in the Claim that the PEX **was installed** on November 30, 2012 and the construction was completed on November 30, 2012.  Because they filed the Complaint on November 3, 202**3**, the Complaint is barred in its entirety.

The TPLA – including its statute of repose – governs all "product liability actions", defined by Tenn. Code Ann. § 29-28-102 as "all actions brought for or on account of personal injury ... or property damage caused by or resulting from the manufacture, construction, design, formula, preparation, assembly, testing, service, warning, instruction, marketing, packaging or labeling of any product."  Moreover:

> "Product liability action" includes, but is not limited to, all actions based upon the following theories: **strict liability in tort; negligence; breach of warranty, express or implied**; breach of or failure to discharge a duty to warn or instruct, whether negligent, or innocent; **misrepresentation, concealment, or nondisclosure, whether negligent, or innocent; or under any other substantive legal theory in tort or contract whatsoever** ....

(Id.; emphasis added).  Because of its comprehensive definition of "product liability action", the TPLA is the "exclusive remedy for injuries caused by products".  *Johnson v. Electrolux Home Products, Inc.*, No. 2:09-CV-142, 2011 WL 4397494, at *3-4 (E.D.Tenn. Aug. 31, 2011), report and recommendation adopted, No. 2:09-CV-142, 2011 WL 4433114 (E.D. Tenn. September 20, 2011.

Plaintiffs concede that their Complaint is a "product liability action":  They expressly allege claims for Strict Product Liability (Count 1), Negligence (Count 2), and Products Liability (Count 3). But the TPLA's statute of repose bars  **all causes of action**, including their remaining claims for Breach of Implied Warranty (Count 4), Breach of Express Warranty (Count 5), and the TCPA (Count 6). *McMillan v. Janssen Pharmaceutica*, Inc., 2011 WL 12088, at *1, *3 (E.D. Tenn.

12

Jan. 4, 2011) (plaintiff's claims for negligence, strict liability, breach of express and implied warranties, negligent misrepresentation, fraud, and deceit were product liability actions under the TPLA and subject to its statute of repose); *Carter v. Danek Med., Inc.*, No. CIV. 96-3243-G, 1999 WL 33537317, at *7 (W.D. Tenn. June 3, 1999) (stating that plaintiff's "claim for negligent or innocent misrepresentation is covered under the Tennessee Products Liability Act ("TPLA") and is considered as part of his products liability action."). Accordingly, Plaintiffs' Complaint is barred in its entirety and should be dismissed.

**B.      The Economic Loss Rule Bars Plaintiffs' Tort Claims**

Dismissal of Plaintiffs' claims for strict liability, product liability, and negligence is also mandated for the independently dispositive reason that they are barred by Tennessee's economic loss rule, which forbids tort claims that exclusively seek to recover damages based upon a product allegedly failing to perform as expected, absent any actual damage to a person or property **other than** the supposedly defective product itself.

The economic loss doctrine "precludes recovery in tort when a product damages itself without causing personal injury or damage to other property." *See Lincoln*, 293 S.W.3d at 489-93 (adopting standard set forth in *East River*, 476 U.S. at 868-71 (1986)). The lynchpin for defining "the product" is whether the allegedly defective item is part of an integrated package. *Americoach Tours, Inc.*, 2005 WL 2335369, at *3; *East River*, 476 U.S. at 870. If so, then damage to another part of the integrated package is treated as damage to "the product itself" and cannot be recovered via a tort claim. *See, e.g.*, *Americoach Tours*, 2005 WL 2335369, at *3 (economic loss rule barred a plaintiff from seeking tort damages against manufacturer of electrical components installed in a bus that was destroyed by a faulty heater because "the entire bus," which was "assembled  . . . from component parts," was "the product itself"; and (ii) "all electrical or mechanical components

13

of the heater were 'supplied . . . as part of an integrated package . . . properly regarded as a single unit.'"); *Tenn. Farmers Mut. Ins. Co.*, 2002 Tenn. App. LEXIS 429, at \*14-20 (recognizing that "[w]hen the unit is damaged by a defective part, the result is economic loss" that cannot be recovered in tort, and holding that economic loss doctrine precluded recovery in tort for vehicle destroyed by defective component part because the entire vehicle "constituted 'the product itself'"). A contrary approach would eviscerate "the distinction between warranty and strict products liability." *East River*, 476 U.S. at 867-68.

Consistent with these principles, the Sixth Circuit has adopted the *East River* approach, applied the economic loss rule in construction defect cases and held that: (1) a defective component or material installed in a structure constitutes only one part of an integrated product (namely, the structure itself); and therefore (2) a defective component or material does not cause damage to "other property" simply because it damages other portions of the structure. *See Mt. Lebanon Pers. Care Home, Inc. v. Hoover Universal, Inc.*, 276 F.3d 845, 850 (6th Cir. 2002) (holding under Kentucky's economic loss doctrine that the wood used in a nursing home was not the "product," and instead, the "entire nursing home" was the product for the purpose of the economic loss rule).[2] Several other courts addressing the issue have reached the same conclusion in the construction defect context.[3]

---

[2] Kentucky's and Tennessee's economic loss rules are substantially identical. *Compare Giddings & Lewis, Inc. v. Indus. Risk Insurers*, 348 S.W.3d 729, 738 (Ky. 2011) (adopting the *East River* holding regarding the applicability of the economic loss doctrine); *with Lincoln*, 293 S.W.3d at 489-93 (adopting same standard under Tennessee law).

[3] *See, e.g., Ass'n of Apt. Owners v. Venture 15, Inc.*, 115 Haw. 232, 285-297 (2007) (holding that economic loss rule barred condominium association's tort claim against subcontractor who manufactured property's concrete floor slabs where the slabs allegedly caused damage to floor tiling, walls, door jambs and windows); *Oceanside at Pine Point Condo. Owners Ass'n v. Peachtree Doors*, 659 A.2d 267, 271 (Me. 1995) ("Whether a product has injured only itself may, of course, be a difficult question to answer. We follow the approach taken by those courts when

Here – in violation of this law – Plaintiffs assert claims for strict liability, product liability, and negligence, against Uponor based on allegations that the Property's plumbing system was constructed using supposedly defective PEX which was installed in the Property which has purportedly caused damage to various other parts of the Property.  (Comp. ¶¶ 15, 17).  However, the Property constitutes a single integrated product purchased by Plaintiffs, and as a matter of law, any damage to various aspects of the Property **cannot** satisfy the "other property" exception to the economic loss rule.  Thus, Plaintiffs' tort-based construction defect claims are precisely the type of claim the economic loss rule forbids, especially where Plaintiffs do not allege any personal injury caused by the PEX.

> **C.**      **The Court Should Dismiss Plaintiffs' Claims for Strict Liability, Negligence and Product Liability Because They Fail to Adequately Plead Causation**

The Court should also dismiss Plaintiffs' claims for strict product liability, negligence, and product liability because Plaintiffs have failed to adequately plead causation in support of these claims.  Causation is a necessary element in strict liability just as it is in a "negligence" claim.  *Nye v. Bayer Cropscience, Inc.*, 347 S.W.3d 686, 704 (Tenn. 2011) (causation is an essential element

---

considering facts analogous to those before us, and look to the product purchased by the plaintiff, as opposed to the product sold by the defendant, to determine whether a product has injured only itself.  The plaintiffs here purchased finished condominium units, not individual components of the units.  Because the windows were integrated into the finished product purchased by the plaintiffs, the damages caused by any defects in the windows [to the structure] constituted damage only to the product itself, not damage to 'other property.'  Plaintiffs' claim for economic damages . . . are properly addressable under a warranty theory." (citations omitted)); *Wash. Courte Condo. Ass'n-Four v. Wash.-Golf Corp.*, 150 Ill. App. 3d 681, 686-687 (1986) (economic loss rule barred tort claims for damages to insulation, walls, ceiling, floors, and electrical outlets resulting from supposedly defective windows and sliding glass doors); *Bay Breeze Condo. Ass'n v. Norco Windows*, 257 Wis. 2d 511, 527-528 (Ct. App. 2002) ("We hold that the economic loss doctrine applies to building construction defects when, as here, the defective product is a component part of an integrated structure or finished product" because "component parts that cause damage to an integrated product [such as a structure] [] result[] in only economic loss" – thus, "[a]lthough the condominium units may have suffered incidental damage as a result of the failed windows, this does not take a commercial dispute outside the economic loss doctrine.").

15

of any products liability action); *Parsons v. Wilson Cnty.*, No. M201400521COAR3CV, 2015 WL 5178601, at *5 (Tenn. Ct. App. Sept. 3, 2015) (to prevail in a negligence action, plaintiff must establish causation in fact as well as proximate cause).

In disregard of this fundamental pleading requirement, the Complaint impermissibly speculates – "upon information and belief" - that longitudinal splits in the Uponor product were "caused by a brittle failure of the tubing material due to oxidation when exposed to the water supply". (Comp. ¶ 11).   The Court cannot credit Plaintiffs' speculative conclusions and unsupported theory of causation, even at the pleading stage.  *Tilden v. Gen. Elec. Co.*, No. 3:11-CV-628, 2012 WL 1023617, at *5 (E.D. Tenn. Mar. 26, 2012) (dismissing complaint where there were no facts permitting the court to infer a causal connection between the alleged defect and the alleged injury).

This is particularly true because the Supreme Court has made clear that "[t]he plausibility standard . . . asks for more than a sheer possibility" of liability[,]" and "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Tilden*, 2012 WL 1023617, at *1.   Indeed, courts within the Sixth Circuit agree that factual allegations that are merely consistent with a defendant's liability do not satisfy the pleading standard, "as mere consistency does not establish plausibility of entitlement to relief even if it supports the possibility of relief."  *JRS Partners, GP v. Leech Tishman Fuscaldo & Lampl, LLC*, 615 F. Supp. 3d 750, 759 (M.D. Tenn. 2022).

Accordingly, Plaintiffs' admitted speculation – by pleading "on information and belief" - that oxidation from exposure to the water supply caused the alleged leak in their PEX is patently incapable of sustaining the Complaint's strict liability, negligence and product liability claims,

16

since Plaintiffs fail to even account for – let alone plead facts excluding – obvious alternative explanations for the purported leak, such as faulty installation of the PEX during the construction process, operational conditions beyond the design parameters of the PEX, as well as the mean/methods used to disinfect the PEX after installation and before being placed into service. *Maness v. Bos. Sci.*, 751 F. Supp. 2d 962, 969 (E.D. Tenn. 2010) (granting motion to dismiss and noting that the fact that plaintiff allegedly suffered an injury from the device does not show that the device was defective); *King v. Danek Med., Inc.*, 37 S.W.3d 429, 435 (Tenn. Ct. App. 2000) (recognizing that "the failure or malfunction of the device, without more, will not make the defendant liable") (citing *Harwell v. Am. Med. Sys., Inc.*, 803 F.Supp. 1287, 1298 (M.D.Tenn.1992)); *Allen v. Am. Med. Sys., Inc.*, 1989 WL 105626 (Tenn. Ct. App. Sept. 15, 1989) (declining to find liability based upon the fact that the device did not function).

**D.   The Implied Warranty Claim is Barred by the Express Warranty and is Untimely**

The written Warranty governing the PEX expressly disclaims the implied warranties of merchantability and fitness.

> THIS LIMITED WARRANTY IS THE FULL EXTENT OF EXPRESS WARRANTIES PROVIDED BY UPONOR, AND UPONOR HEREBY DISCLAIMS ANY WARRANTY NOT EXPRESSLY PROVIDED HEREIN, INCLUDING, WITHOUT LIMITATION, THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE WITH RESPECT TO THE PRODUCTS COVERED HEREUNDER.

[Doc. 1-1, PageID 20]. This alone bars Plaintiffs' implied warranty claims. *See* Tenn. Code Ann. § 47-2-316 (parties can exclude or modify the implied warranty of merchantability).

Moreover, claims for breach of implied warranty are governed by a four-year statute of limitations pursuant to Tenn. Code Ann § 47-2-725(1), and "[a] cause of action accrues when the breach occurs, <u>regardless of the aggrieved party's lack of knowledge of the breach</u>." Tenn. Code Ann § 47-2-725(1) (emphasis added).  The breach of warranty occurs when <u>tender of delivery is</u>

17

made." *Id.* (emphasis added). Plaintiffs represented in their Claim that the PEX was installed on November 30, 2012 and the construction was completed on the same date. [Doc. 1-1, PageID 21]. Because Plaintiffs' home was admittedly completed and delivered to them by November 30, 2012 – and because Plaintiffs failed to file this action until more than four years later – their implied warranty claims are facially untimely as a matter of law, such that they must be dismissed.

## V. CONCLUSION

For each of the foregoing reasons, the Court should: (i) grant Uponor's Motion, and (ii) enter an Order: either (a) compelling the parties to address any viable claims through arbitration or (b) dismissing the Complaint and dismissing Uponor from this action with prejudice.

By:/s/ *M. Andrew Pippenger*
M. Andrew Pippenger, TN BPR 018183
PURYEAR LAW GROUP
735 Broad Street, Suite 214
Chattanooga, TN 37402
Tel: (615) 630-6601
Fax: (615) 630-6602
apippenger@puryearlawgroup.com

*Attorneys for Defendant Uponor, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I, the undersigned attorney, do hereby certify that on December 22, 2023 the foregoing pleading was electronically filed with the Clerk of Court using the CM/ECF filing system which automatically sends email notifications of such filing to the following attorneys of record:

James Stephen King, BPR No. 013575
Evans Petree PC
1715 Aaron Brenner Dr.
Suite 800
Memphis, TN 38120
(901) 525-67818

*Attorneys for Plaintiff*

/s/ M. Andrew Pippenger
M. Andrew Pippenger